## Case No. 14,529.

### UNITED STATES v. BARROWS et al.

[1 Abb. U. S. 351; [1] 10 Int. Rev. Rec. 86; 7 Phila. 609; 3 Pittsb. Rep. 151; 26 Leg. Int. 276; 1 Chi. Leg. News, 409; 16 Pittsb. Leg. J. 124.]

District Court, W. D. Pennsylvania. May Term, 1869.

INTERNAL REVENUE—TREASURY REGULATIONS.

1. A regulation of the treasury department, made in pursuance of an act of congress, becomes a part of the law, and is of the same force as if incorporated in the body of the act itself.

2. Under the internal revenue laws of July 13, 1866, § 94 [14 Stat. 128], and March 3, 1865, § 61 [13 Stat. 472], when oil is transported from one district to another, under a transportation bond, the duty is assessed and paid on any deficiency or reduction of the number of gallons received at the warehouse, from the number of gallons as stated in the bond at the place of shipment, less the per centum for leakage allowed by the treasury department. And this is so, although there has been an absolute loss by solar heat, or the action of the elements.

3. The law has provided a rule regulating the allowance for leakage, from which, however great the hardship, it is not the province of the courts to depart.

Mr. Schoyer, Jr., for defendants.
Mr. Carnahan, U. S. Dist. Atty.

McCANDLESS, District Judge. This is a case stated upon an oil transportation bond. On June 30, 1866, the defendants shipped by railroad from the Twentieth district of Pennsylvania to the Fifth district of New Jersey, ten hundred and eighty barrels, containing forty-five thousand three hundred and twenty-four gallons of refined oil, in good packages, and under legal permits and certificates from the proper authorities. Under like authority the oil was removed from the Fifth district of New Jersey to the bonded warehouse of Reynolds, Pratt & Co., in the Second district of New York, without inspection and gauging in the New Jersey district, with the same effect as if the Second district of New York had been the destination set forth in the permit and bond under which such transportation was made.

---

[2] [From 9 Chi. Leg. News, 308.]

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[1] [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission.]

The oil was properly gauged and inspected in the bonded warehouse of Reynolds, Pratt & Co., on July 30, 1866. By this inspection there was found to be a loss of six thousand two hundred and sixty-four gallons. For the tax of twenty cents per gallon upon this quantity so lost, this action is instituted; the tax upon the residue of the forty-five thousand three hundred and twenty-four gallons having been properly settled and accounted for. The effect of continued extremely hot weather upon oil barrels, exposed for the length of time ordinarily required in transit from the Twentieth district of Pennsylvania to the Second district of New York, is to decompose their lining and open their seams. From the last of June to the close of July, 1866, the weather continued excessively hot. The loss of so much of the six thousand two hundred and sixty-four gallons as exceeds the quantity allowed for leakage, by the regulations of the department at Washington, arose from the effect of solar heat upon the barrels containing it.

The amount of actual leakage on oil removed in bond at the time of this loss, allowed by the regulations in pursuance of section 61 of the act of June 30, 1864, was not to exceed three and one-half per cent. on any distance exceeding five hundred miles. The distance from the Twentieth district of Pennsylvania to the Second district of New York is in excess of five hundred miles.

It is not disputed that an allowance of one thousand five hundred and eighty-six gallons, or three and one-half per cent. on forty-five thousand three hundred and twenty-four gallons, should be made for leakage; but it is claimed that there should be a deduction for the remaining four thousand six hundred and seventy-eight gallons, because the loss was occasioned by the effect of solar heat upon the article transported.

This is the question for our decision, and I have given to it all the consideration which the multiplicity of my judicial engagements and the demands upon my time would permit

Congress wisely encouraged the exportation of oil, for it has become an important element in regulating the balance of trade between the United States and foreign nations. Oil exported was exempt from taxation. If for sale or consumption in the United States it was subject to a tax of twenty cents per gallon, to be assessed and collected, and paid by the producer or manufacturer thereof, as is provided by section 61 of the act of July 13, 1866. By this section, as amended by the act of March 3, 1865, the oil may be removed, without the payment of the duty, under such rules and regulations, and upon the execution of such transportation bonds, or other security, as the secretary of the treasury may prescribe. Upon such removal, it must be transferred to a bonded warehouse, where it is again inspected and gauged, and "the duty shall be assessed and paid on any deficiency or reduction of the number of proof gallons (beyond such allowance for leakage as may be established by the regulations of the commissioner of internal revenue), received at the warehouses from the number of proof gallons as stated in the bond given at the place of shipment." Here, then, is a plain rule of computation, and the per centum of deduction being fixed by a regulation of the department, in conformity to an act of congress, becomes a part of the law, and of as binding force as if incorporated in the body of the act itself.

It is contended by defendants' counsel, in an argument of much ability, that the tax is upon the consumption. It is not upon the consumption, but upon the manufactured article. The government is not to ascertain whether it has been consumed, but whether it has been exported. If so, it is free. If not, it is subject to the tax of twenty cents per gallon. Fixing a maximum per centage for leakage was designed to prevent the possibility of frauds, by the withdrawal or abstraction of any portion of the oil during its period of transit. Such being the rule prescribed by competent authority, courts have no right to depart from it, even in case of absolute loss by the action of the elements. The government is not an insurer. The owner insures, and must take the responsibility. The simple inquiry is, has he complied with the condition of his bond? Has he produced to the collector of the Twentieth district of the state of Pennsylvania a certificate showing that such merchandise has been duly placed in the warehouse designated, from which it cannot be removed except for exportation, or upon payment of the tax, or has he paid the duties required by law?

It is wholly unnecessary to enter into a discussion as to the effect of solar heat upon refined oil, or as to the penetrating and permeating qualities of the liquid itself. It was precisely because of the operation of this agency that a rule was necessary to fix the allowance. In some cases there would be no leakage at all, in some, less than three and a half per cent.; in a majority of cases, about three and a half per cent., and in some cases much more. On what principle is a rule of law governing this subject to be relaxed and set aside, because there was extraordinary warm weather in June or July of a particular year? As was ably argued by the counsel for the government, the leakage in this case happened in the ordinary way, was produced by the ordinary causes, with the difference, that one cause, solar heat, was operating with more than ordinary power. The result was leakage, and the law, and the regulations of the department, do not authorize a distribution of leakage into ordinary and extraordinary as respects an abatement of taxes. The law calls the loss thus produced leakage, and has provided a rule regulating the allowance, from which, however great the hardship, it is not our

province to depart. Any other construction would not only open a wide door to fraud, but would practically nullify the regulation itself.

It follows that the defendants have no lawful claim to, or deduction for, the four thousand six hundred and seventy-eight gallons, by reason of its loss, caused by solar heat, and judgment must be rendered for the United States, for the sum of nine hundred and thirty-five dollars and sixty cents, with costs of suit. Judgment accordingly.